*In re* ESTATE OF WILMA M. MASLOWE, a/k/a Wilhelmina M. Maslowe, Deceased (Emmanuel John Seidner, Ex'r of the Estate of Wilma M. Maslowe, a/k/a Wilhelmina M. Maslowe, Petitioner-Appellant, v. Richard H. Maslowe, Respondent-Appellee).

Second District   No. 84—0261

Opinion filed June 14, 1985.

Emmanuel John Seidner and H. Lester Seidner, both of Seidner & Seidner, of Chicago, for appellant.

Richard H. Maslowe, of Lombard, for appellee, *pro se.*

JUSTICE STROUSE delivered the opinion of the court:

The petitioner, Emmanuel John Seidner, the executor of the estate of Wilma M. Maslowe, appeals from an order of the trial court of March 2, 1984, finding the respondent, Richard H. Maslowe, in contempt of court and fining him $750. Seidner asserts on appeal that the trial court erred in fining Maslowe $750 rather than imposing the civil contempt sanction of a jail term pursuant to section 16—1(d) of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 16—1(d)).

The facts are set forth extensively in the opinion of this court in *In re Estate of Maslowe* (1983), 119 Ill. App. 3d 776. Following the remand to the trial court in the first opinion, the petitioner gave

Maslowe 14 days' notice that he would appear before Judge Teschner and move for a hearing on the rule to show cause pursuant to the mandate. Maslowe failed to appear on February 14, 1984, or to respond to telephone calls, and the court on its own motion continued the hearing to February 28, 1984. On February 28, on its own motion, the court again continued the matter to March 2, 1984, when the respondent stated that he could not go ahead with the hearing because he had an appointment. On March 2, 1984, the trial court heard the rule to show cause, at which time the court heard all of the evidence and found Maslowe in contempt of court and fined him $750, from which order the estate appeals.

At the hearing, Maslowe testified that he had endorsed the stocks as personal representative, that they had been sold, and that he had never turned them over to Seidner nor did he turn over the proceeds of their sale. They were sold while the case was pending on appeal from this court, and the proceeds were commingled with the proceeds of the Michigan home. Seidner testified that the expenses of the Illinois estate were $561.20, that the executor had 69 hours of uncompensated service for which the fair, usual and customary fee would be $6,900, and that the value of the stocks on the date they should have been turned over was $23,310.12, as stipulated to by Maslowe and his attorney, plus dividends during the two years of $8,601.91. Rebuttal testimony merely indicated these facts were true.

The estate contends that under section 16—1(d) of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 16—1(d)) the appropriate order of the court should be a jail term for noncompliance with the court order and, further, that a $750 fine is not a proper sanction for failure to turn over securities whose fair market value is in excess of $23,000. The appellee contends that the trial court's finding and imposition of a fine should not be disturbed unless there is a clear abuse of discretion.

■■ Section 16—1 of the Probate Act states, in pertinent part:

"(a) Upon the filing of a petition therefor by the representative *** the court shall order a citation to issue for the appearance before it of any person whom the petitioner believes (1) to have concealed, converted or embezzled or to have in his possession or control any personal property, books of account, papers or evidences of debt or title to lands which belonged to a person whose estate is being administered in that court or which belongs to his estate or to his representative ***. The petition shall contain a request for the relief sought.

\* \* \*

(d) The court may examine the respondent on oath whether or not the petitioner has proved the matters alleged in the petition, may hear the evidence offered by any party, may determine all questions of title, claims of adverse title and the right of property and may enter such orders and judgment as the case requires. If the respondent refuses to answer proper questions put to him or refuses to obey the court's order to deliver any personal property or, if converted, its proceeds or value, or books of account, papers or evidences of debt or title to lands, the court may commit him to jail until he complies with the order of the court or is discharged by due course of law and the court may enforce its order by execution against the respondent's real and personal property. The court may tax the costs of the proceeding against the respondent and enter judgment therefor against him." Ill. Rev. Stat. 1981, ch. 110½, pars. 16—1(a), (d).

The Illinois Supreme Court in *Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 208-09, quoting from *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409-10, defined and distinguished civil and criminal contempt as follows:

" 'Contempt proceedings, while usually called civil or criminal, are, strictly speaking, neither. They may best be characterized as *sui generis*, and may partake of the characteristics of both. [Citations.] Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while it has been said that civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. [Citations.] These principles, while seemingly plain and adequate, are most difficult to apply. The line of demarcation in many instances is indistinct and even imperceptible. [Citation.] A further guide may be found in the purpose of punishment. Imprisonment for criminal contempt is inflicted as a punishment for that which has been done, whereas imprisonment for civil contempt is usually coercive and, as was said in the case of *In re Nevitt*, (8th Cir.) 117 F. 448, "he [the contemnor] carries the key of his prison in his own pocket." 21 Ill. 2d 407, 409-10.' " *Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 208-09; *People v. Denson* (1975), 59 Ill. 2d 546, 554-55; see also *Weglarz v. Bruck* (1984), 128 Ill. App. 3d 1, 7-8; *Allen v. Duffie* (1984), 127 Ill. App. 3d 820, 822; *National Metalcrafters v. UAW Local 449*

(1984), 125 Ill. App. 3d 399, 405; *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1982), 108 Ill. App. 3d 266, 277; *Kauk v. Matthews* (1981), 100 Ill. App. 3d 107, 114-15.)

Further explained, civil contempt occurs when the contemnor fails to do that which the court has ordered, while criminal contempt consists of doing that which has been prohibited. (*Shillitani v. United States of America* (1966), 384 U.S. 364, 368, 16 L. Ed. 2d 622, 626, 86 S. Ct. 1531, 1534; *National Metalcrafters v. UAW Local 449* (1984), 125 Ill. App. 3d 399, 405.) In civil contempt proceedings, an order entered serves a dual function: to vindicate the authority and dignity of the court and to advance the relief granted to a party to the litigation. (*Kauk v. Matthews* (1981), 100 Ill. App. 3d 107, 115.) Thus, where the contempt proceedings are intended to coerce or obtain compliance with a court order, rather than to punish the contemnor, the contempt may be construed as civil. *National Metalcrafters v. UAW Local 449* (1984), 125 Ill. App. 3d 399, 405; see *Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 676-77; *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 471, *aff'd in part, rev'd in part on other grounds sub nom. Marcisz v. Marcisz* (1976), 65 Ill. 2d 206.

Here, the contempt is civil in nature. Seidner pursued the action for the sole purpose of compelling Maslowe to comply with the court's turn-over order. Such compliance in turn would benefit Seidner's administration of the Illinois estate. Maslowe's failure to do that which was ordered by the court for the benefit of another party may be adjudged civil contempt. See *Bone v. Bone* (1976), 43 Ill. App. 3d 363, 364-65.

■ The question remaining is the court's imposition of a fine as the proper sanction for Maslowe's contempt of court. The power to punish for contempt rests within the sound discretion of the trial court, and its determination will not be disturbed on review unless there has been an abuse of discretion. *In re Estate of Hader* (1983), 114 Ill. App. 3d 611, 618.

The estate initiated the contempt proceedings against Maslowe pursuant to section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 16—1). A citation proceeding under section 16—1 is " 'intended to provide a comprehensive and summary means for the discovery and recovery of assets, or of their value if they have been converted.' " (*In re Estate of Denler* (1980), 80 Ill. App. 3d 1080, 1091-92, quoting from *Keshner v. Keshner* (1941), 376 Ill. 354, 359.) Because of the summary nature of the proceeding, the

trial court has been granted broad statutory powers to enter such orders and judgment as the case requires, and to commit the contemnor to jail until he complies with the order of the court or is discharged by due course of law. See Ill. Rev. Stat. 1981, ch. 110½, par. 16—1(d); *In re Estate of Shanahan* (1978), 59 Ill. App. 3d 269, 273.

Maslowe testified at the hearing that the value of the stocks was "very close to *** almost to the penny" of $23,310.12. A $750 fine clearly is not a proper sanction for Maslowe's failure to turn over securities whose fair market value is in excess of $23,000. Applying the statute's protections to this fact and the facts herein, we believe the remedy of a jail term satisfies the trial court's need for a more compelling sanction. This sanction would give the contemnor an opportunity to purge himself of the contempt by compliance with the court's order. (See *Continental Illinois National Bank v. Brach* (1979), 71 Ill. App. 3d 789, 793.) As long as the contempt order, within its four corners, sets forth the terms upon which a contempt may be dissolved and the defendant released from jail, the order is valid. (See *Todd v. Arbuckle* (1971), 1 Ill. App. 3d 32, 33.) Thus, the circumstances of this case indicate that a civil contempt occurred for which imposition of a jail term is proper and the payment of a fine is inappropriate.

The judgment of civil contempt is affirmed; the order for payment of a fine is reversed and the cause is remanded to a trial judge other than Judge John Teschner. The court is directed to hold a hearing to determine the monetary damage to the estate by the defendant's contumacious acts and to take such action as is necessary to enforce its payment.

Reversed and remanded with directions.

NASH, P.J., and REINHARD, J., concur.