*In re* MARRIAGE OF MICHAEL R. MORSE, Petitioner-Appellant, and MARY JOAN L. MORSE, Respondent-Appellee.

Second District   No. 2—91—1088

Opinion filed January 21, 1993.

Terry R. Mohr, of McHenry, for appellant.

Steven A. Miner, of Barrington, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Petitioner, Michael R. Morse (husband), appeals from an order which determined that, under the judgment for dissolution of the parties' marriage, respondent, Mary Joan L. Morse (wife), was entitled to permanent maintenance and attorney fees. Husband also appeals from an order finding him in contempt for (1) failure to pay child support

and maintenance, (2) failure to authorize his attorney to turn over escrow funds, (3) failure to obtain leave of the court prior to selling, assigning, or transferring marital assets, and (4) failure to make mortgage payments. He asserts on appeal that all such findings were criminal in nature and rendered in the absence of proper procedural protections and therefore should be reversed. Furthermore, husband argues that he has purged himself of such contempt findings. We affirm in part and reverse in part.

The parties were married on August 26, 1972. The couple had four children. At the time of dissolution, the ages of the children were Michael, age 16, Daniel, age 14, Robert, age 10, and Richard, age 5. On June 8, 1989, husband initiated a dissolution of marriage action by filing a petition against wife based on the grounds of mental cruelty to husband. A temporary order was entered July 14, 1989, awarding the temporary custody of the four minor children to husband. Husband had custody of the four children from May 1989 until October 1990. Eventually, husband amended the petition for dissolution of marriage to be based, rather, on the ground of irreconcilable differences. Custody of Richard was changed from husband to wife. Also, an order regarding temporary child support was entered by the court on January 10, 1991, requiring husband to pay to wife $400 per month as temporary child support. After trial on June 26 and 27, 1991, custody of the three eldest children was transferred to wife.

At the time that the dissolution of marriage proceedings commenced, the parties owned three businesses: Eagle Press of Crystal Lake, Eagle Press of Barrington, and a business known as the "Letter Shop" in Barrington. They also owned a home in Cary, Illinois. All of the businesses were operated by husband. Wife worked at the businesses intermittently during the marriage on both a part-time and a full-time basis. Wife is legally blind and at the time of dissolution was 38 years old. She is entitled to receive social security disability benefits in the amount of $826 per month for herself and $169 per month for each minor child. She has done day-care in the home and became a licensed day-care operator as of January 23, 1991. Husband reported a gross income from all businesses in the amount of $60,000 annually. He was 39 at the time of dissolution.

During the course of the dissolution proceedings, husband sold Eagle Press of Crystal Lake. Wife petitioned to prohibit sale of the marital assets. The court entered a temporary restraining order (TRO) January 8, 1991, enjoining husband from selling, transferring, or disposing of any assets. The court entered another order January 24, 1991, which modified the January 8, 1991, order. In addition to

making the provision to prohibit divestment of marital assets applicable to both parties, husband was ordered to authorize his attorney to release funds held in escrow to wife's attorney. Subsequent to the TRO, husband filed a chapter 7 bankruptcy petition on the Eagle Press of Barrington business and closed that business. Wife filed a petition for rule to show cause with respect to the unauthorized liquidation of that business as well as other issues. On February 28, 1991, the court found husband in contempt on four bases. Those contempt findings are:

"That as to the Petition for Rule to Show Cause the Court finds as follows:

(A) That Plaintiff is in indirect civil contempt of this court's order of Jan. 24, 1991, for failure to authorize attorney Walter Binder to turn over escrow funds. Plaintiff's actions are willful and contemptuous. Plaintiff is hereby sentenced to 7 (seven) days in the McHenry County jail. Plaintiff may purge himself of contempt by signing any authorization needed to release said escrow funds by March 1, 1991. Sentence stayed to March 1, 1991 at 9:00 A.M. ***

(B) The court finds the Plaintiff, Michael Morse, in indirect criminal contempt for violating this courts [*sic*] order of Jan. 8, 1991, and Jan. 24, 1991 for his failure to obtain leave of court prior to selling, assigning or transferring assets. Plaintiff is hereby sentenced to thirty (30) days in the McHenry County jail. Said sentence to commence on March 16 1991, at 9:00 A.M.

(C) Plaintiff is found in indirect civil contempt of this Courts [*sic*] orders of Jan. 8 and Jan. 24, 1991 for failure to pay mortgage payments. Plaintiff is sentenced to (30) Thirty days in the McHenry County Jail to serve concurrently with the sentence set forth in paragraph B above and said sentence commencing on March 16, 1991 at 9:00 A.M. Plaintiff may purge himself of this contempt by bringing all mortgage payments current by March 16, 1991 ***.

(D) Plaintiff is found in indirect civil contempt for failure to pay child support and maintenance. Plaintiff may purge himself of this contempt by bringing said support current by March 16, 1991. Plaintiff is sentenced to 7 days in the McHenry County jail. Sentence stayed to March 16, 1991 at 9:00 A.M."

Husband filed a petition to reconsider the contempt findings of the February 28, 1991, order, arguing that (1) he purged himself in one finding by authorizing the release of certain funds; (2) he could

not be held in contempt for failure to make mortgage payments, as no order was made by the trial court to make mortgage payments; and (3) the criminal contempt finding of the February 28, 1991, order was not made within the proper procedural safeguards imposed for criminal contempt proceedings. The petition to reconsider was continued until trial.

Trial was held on June 26 and 27, 1991. Numerous petitions and motions had been filed by the parties throughout the proceedings and several were ruled on at trial. At the time of trial, the only business remaining in the marital estate was the "Letter Shop." The trial court rendered an opinion and order on July 31, 1991, and a judgment of dissolution of marriage was thereafter entered on September 16, 1991.

The trial court found that husband had dissipated the marital assets. The total value of the marital assets, including dissipated assets, amounted to $234,089.67. The trial court stated that it considered all the relevant factors under sections 503 and 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, pars. 503, 504) and divided the property equally between the parties. The assets remaining at trial amounted to $42,866.57. The remainder had been dissipated by husband. The trial court awarded all marital property in existence to wife, and the court awarded a judgment for the wife against the husband for the balance of $74,178.26.

The trial court found that husband had demonstrated the ability to earn substantial sums and that his present financial condition had been caused by his own willful acts. The trial court also found that wife lacked the ability to pay her own attorney fees. The trial court ordered husband to pay wife's attorney fees in the amount of $27,000 and $2,416. The court also awarded wife $1,000-per-month permanent maintenance. Child support was ordered to continue as directed in previous orders. The judgment also confirmed previous contempt findings and also made an additional finding of contempt for husband's failure to pay support since February 28, 1991. The additional finding stated:

> "That Plaintiff, MICHAEL R. MORSE, is sentenced to ninety (90) days in the McHenry County Jail for his willful and contumacious failure to pay child support and maintenance. Sentence to be served concurrently. Plaintiff may purge himself by being current on all support and maintenance obligations on September 16, 1991. Mittimus stayed to September 16, 1991, at 9:00 a.m."

An order allocating debts was entered September 25, 1991. An appeal was timely filed.

■ Both husband's and wife's attorneys should note that the briefs are deficient in two ways. First, appellant's brief should contain a jurisdictional statement, citing the law that is the basis for the appeal, pursuant to Supreme Court Rule 341 (134 Ill. 2d R. 341(e)(4)(ii)). In addition, both briefs were deficient with respect to the cite form. Note that citation of Illinois cases shall be to the official reports. (134 Ill. 2d R. 341(d).) For appellate level cases, that means the Illinois Appellate Court Reports. In this case, not adhering to the supreme court rules cost the court needless time in checking cites. Similar future violations of supreme court rules by appellate counsel will result in appropriate sanctions.

### CONTEMPT FINDINGS

Husband argues that the four findings of contempt in the first order and the finding of contempt in the second order were findings of indirect criminal contempt, and, since they were rendered in the absence of procedural safeguards afforded in criminal proceedings, they were in error and should be reversed. Wife, on the other hand, argues that all five findings of contempt were civil in nature and therefore do not require the procedural safeguards required by criminal contempt findings. Wife argues that failure to pay child support is *prima facie* evidence of contempt and that, in making findings of contempt, each sentencing order need only have a valid purging provision.

■ The first issue presented is whether the findings of contempt are civil or criminal in nature. In findings (A), (C), and (D) of the February 28, 1991, order, the judge expressly referred to civil contempt. Nevertheless, the distinction between civil and criminal contempt depends on the nature of the sanction being imposed, rather than the trial court's characterization. Criminal contempt is conduct which is directed against the dignity and authority of the court. (*In re Marriage of Ruchala* (1991), 208 Ill. App. 3d 971, 977.) Where the contemnor is being punished without the possibility of relief from punishment, the finding is one of criminal contempt. (*In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 43.) Civil contempt relies on coercion of the contemnor: he is being coerced to do something and thus can be relieved from the coercion by compliance. (*Ruchala*, 208 Ill. App. 3d at 977; *Betts*, 200 Ill. App. 3d at 43.) It is civil contempt that is defined by the phrase that the contemnor "has the keys to the cell in his own hands." That means that the contempt finding should give the contemnor the ability to purge at any time. (*In re Marriage of*

*Talmadge* (1989), 179 Ill. App. 3d 806.) Furthermore, civil contempt has been defined as a redress for failure to do something ordered by a court in a civil action. (*In re Marriage of Winton* (1991), 216 Ill. App. 3d 1084, 1089.) Thus, for civil contempt to be found, the sanctions are coercive, and the respondent must be allowed to purge himself of contempt at any time thereafter.

In the present case, we have before us contempt findings which are reparations for failure to follow court orders: (1) failure to pay court-ordered child support and maintenance; and (2) failure to follow a court order to obtain leave of the court prior to transferring assets. Thus, one may conclude that these both are examples of civil contempt. Indeed, that is what the trial court intended in making these findings.

Despite this, the nature of the sanction imposed is a punitive one. In the case of each finding, husband must purge by a certain date or forever be prohibited from purging. If there is an inability, at any time, by the contemnor to be able to purge himself, then the type of contempt is criminal in nature. (*Talmadge*, 179 Ill. App. 3d at 818.) In *Talmadge*, the appellate court reversed and remanded the cause to the trial court. The trial court's contempt finding stated that respondent was sentenced to 30 days in jail with said sentence to be stayed for a period of 45 days to allow respondent to purge himself by paying medical expenses incurred by respondent's and petitioner's children. The appellate court found that such a finding was criminal in nature, since, once respondent failed to pay within 45 days, he was to be incarcerated without any way to purge himself. *Talmadge*, 179 Ill. App. 3d at 818.

█ In the present case, the findings made in the trial court give purging provisions, as required for civil contempt findings, but they are limited purging provisions. For instance, the first finding in the January 8, 1991, order states:

> "(A) *** Plaintiff may purge himself of contempt by signing any authorization needed to release said escrow funds by March 1, 1991. Sentence stayed to March 1, 1991 at 9:00 A.M."

In the case of this finding, if husband does not purge himself as of March 1, 1991, he goes to jail for seven days with no further opportunity to purge himself. According to *Talmadge*, this type of contempt finding is characterized as criminal in nature. (*Talmadge*, 179 Ill. App. 3d at 818.) This type of analysis applies to all five of the contempt findings at issue. Thus, this court finds that all five findings at issue are indirect criminal contempt findings.

■ Since all five findings are deemed by this court to be criminal in nature, we must examine whether they were rendered in the presence of required procedural safeguards. There are several safeguards in place for criminal proceedings, and they apply to findings of indirect criminal contempt. (*Betts*, 200 Ill. App. 3d at 58.) These safeguards are: (1) contemnor must be given notice that criminal sanctions may be imposed against him; (2) contemnor ·must have the opportunity to answer; (3) the burden of proof is on the petitioner; (4) contemnor enjoys the privilege against self-incrimination; and (5) contemnor must be proved guilty beyond a reasonable doubt. (*Betts*, 200 Ill. App. 3d at 58.) We will now examine these protections individually.

For a finding of indirect criminal contempt, a contemnor must be notified in advance that criminal sanctions may be imposed against him. For this to be done properly, a party must specify in advance the nature of the contempt proceedings in order to avoid the surprise that could occur when a respondent goes into court and finds that the nature of the proceedings is criminal. This requirement may be met by making the initial pleading in the form of a petition for adjudication of criminal contempt. (*In re Marriage of Alltop* (1990), 203 Ill. App. 3d 606, 616; see also *Betts*, 200 Ill. App. 3d at 58-59.) In *Alltop*, petitioner petitioned the trial court for a rule to show cause for respondent's failure to pay education expenses of their child and for failure to distribute a worker's compensation settlement according to order. (*Alltop*, 203 Ill. App. 3d at 616.) The trial court imposed a punitive sanction which amounted to a criminal contempt finding. On appeal, the respondent argued that procedural deficiencies existed for a finding of criminal contempt. The appellate court agreed. The appellate court held that the pleading must be entitled a "petition for adjudication of criminal contempt" and that a "petition for rule to show cause" is not adequate to give notice to respondent of the criminal nature of the proceedings. *Alltop*, 203 Ill. App. 3d at 616.

■ In the present case, each of the orders which contained contempt findings was rendered in response to a petition for rule to show cause. The first order, the February 28, 1991, order, was in response to the petition for rule to show cause filed February 25, 1991. The second order, incorporated into the judgment of dissolution, was given pursuant to a petition for rule to show cause filed May 7, 1991. Yet, this court has determined that both orders contained findings of indirect criminal contempt. These findings were not made within the parameters of the proper procedural protections because the *Alltop* requirement is that a finding of criminal contempt may be found only where respondent is given notice of pending criminal proceedings.

Thus, these findings are criminal, but did not comport with this procedural guideline.

Furthermore, husband argues that the first order (February 28, 1991) was not only facially defective, because it rendered criminal contempt findings in the absence of the proper notice, but the order itself went beyond the petition and, thus, further denied husband reasonable notice. In fact, the February 25, 1991, petition for rule to show cause alleged a violation of the January 8, 1991, temporary restraining order (TRO) which restrained husband from transferring, selling, or assigning some properties. However, the February 28, 1991, order went farther than merely finding him in violation of that January 8, 1991, TRO; it went so far as to find him in violation of a January 24, 1991, order as well, which was not mentioned in the petition for rule to show cause. Thus, this court finds that husband was not properly put on notice of either the nature or the scope of the proceedings that would be dealt with in the February 28, 1991, order.

A second procedural safeguard is that the burden of proof is on the party alleging contempt. (*Betts*, 200 Ill. App. 3d at 51.) Husband argues that, for the February 28, 1991, order, no evidence was heard, so husband could not have been proved guilty. He also argues that, for the second order, evidence was heard at trial. But at trial the burden was on husband to prove his innocence. Wife did not raise a contention on this issue.

■ This court finds that husband's contentions are supported by the record. In one case, no evidence was heard, so wife did not sustain her burden to prove husband guilty. In the other case, wife also did not sustain her burden to prove husband guilty. Thus, another of the procedural protections was not adhered to when the findings of indirect contempt were rendered.

Another procedural safeguard is proof of guilt beyond a reasonable doubt. Husband argues that he must be proved guilty beyond a reasonable doubt and that the trial court must make an express finding that guilt has been proved beyond a reasonable doubt. On the other hand, wife argues that failure to pay child support is *prima facie* evidence of contempt, and so there is no need to find guilt beyond a reasonable doubt.

It is reversible error if the trial court finds criminal contempt but does not make a finding that guilt was found beyond a reasonable doubt. (*In re Marriage of Betts* (1989), 190 Ill. App. 3d 961, 967.) In that case, the failure of the trial court to recite in its mittimus or to recite at the hearing that respondent was found guilty beyond a rea-

sonable doubt was found error. See also *In re J.L.D.* (1989), 178 Ill. App. 3d 1025, 1033.

This court has found that all five of the contempt findings at issue are indirect criminal contempt findings. In the present case, the trial court made no express findings as to guilt beyond a reasonable doubt at the trial with respect to the findings lettered (A), (C), and (D) for the first order and the only contempt finding of the second order. Thus, in conclusion, the four findings expressly termed civil contempt which this court has determined are criminal contempt findings were not made upon an express finding of guilt beyond a reasonable doubt. This, too, is a procedural deficiency.

Husband further argues about the disposition of the express criminal contempt finding. He argues that the first contempt order's finding of criminal contempt was vacated by agreement at trial on June 26, 1991.

This court finds that, indeed, both counsel did agree to vacate the finding of criminal contempt (lettered (B) in the first order) on June 26, 1991, at trial. Counsel for wife indicated that the charge of criminal contempt would be pursued by the filing of a "Petition for Adjudication of Criminal Contempt." Such a petition was filed on June 24, 1991, and the count at issue, count I, was denied in the July 31, 1991, order.

As to wife's statement that failure to pay child support is *prima facie* evidence of contempt, this statement is true. (*In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 94.) However, the only contempt findings as to child support are the findings (D) of the February 28, 1991, order and the single contempt finding of the July 31, 1991, order. But, this court has found these two findings to be criminal in nature. Thus, even though failure to pay child support is *prima facie* evidence of contempt, all five of these findings are criminal in nature, and the procedural safeguards apply.

In conclusion, it is clear that judgments of guilt beyond a reasonable doubt were neither rendered nor recorded for the criminal contempt findings in this case. Thus, another of the procedural safeguards necessary in indirect criminal contempt proceedings was not followed.

■ Thus, this court has found that the five findings of contempt rendered in the February 28, 1991, order and the July 31, 1991, order were findings of indirect criminal contempt which did not comport with the proper procedural safeguards. These findings of contempt were rendered in error. All five contempt findings are reversed.

MAINTENANCE

Husband argues that the award of $1,000-per-month permanent maintenance was excessive and was an abuse of discretion on the part of the trial court. The Illinois Marriage and Dissolution of Marriage Act (the Act) states that an award of maintenance is warranted where the court finds that the party seeking maintenance lacks sufficient property or is unable to support herself through employment or is the custodian of a child whose condition or circumstances make it appropriate that she not be required to seek employment outside the home. Ill. Rev. Stat. 1991, ch. 40, par. 504(a).

■ Section 504(b) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 504(b)) provides that the maintenance order shall be in such amounts and for such periods of time as the court deems just after consideration of several factors, including:

"(1) [T]he financial resources of the party seeking maintenance, including marital property apportioned to [her], and [her] ability to meet [her] needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Ill. Rev. Stat. 1991, ch. 40, par. 504(b).)

An award of maintenance is a matter within the sound discretion of the trial court and will not be reversed on appeal unless it amounts to an abuse of discretion. Such an abuse of discretion occurs where no reasonable person would take the view adopted by the court. *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 33.

Husband does not take exception to the trial court's finding under section 504(b) of the Act, and concedes that wife may be entitled to some maintenance in the future. However, he argues, the trial court should have considered all the relevant factors. For instance, her income from (1) social security disability for herself and the children, (2) the licensed day-care facility, (3) the "Letter Shop" income, and (4) child support for minor child, Richard, add up to $2,946 monthly in-

come. Wife's monthly living expenses were set out in an affidavit and added up to $1,622.95, plus installment debt of $780 per month. Wife contends that the "Letter Shop" yields no income, so the income that is attributed to wife by husband in his brief is overstated by $700 per month. Husband also argues the court should have considered the fact that her condition of blindness is stable, she is in otherwise excellent health, that husband has no income, and he does have substantial debt. Wife argues that she has received debt in the distribution of the assets (alleging the "Letter Shop" is in debt) and that she is accustomed to a standard of living which included $78,024 worth of income ($60,000 from the businesses and $18,024 from social security). She continues that husband has a college degree while wife has a high school degree, she has no real prospect for employment due to her disability, she needs to take care of the youngest child, and she lacks marketable skills.

Husband claims that, although permanent maintenance is appropriate where the spouse did not develop job skills during a marriage, in this case, wife did develop managerial skills at the businesses owned by the couple during the marriage. Thus, he contends, the court should have reserved for periodic review the award of maintenance. Furthermore, he asserts that there is an affirmative duty on the part of the spouse receiving maintenance to become employed.

The court does not find husband's argument convincing. The cases husband cites may be distinguished. In *In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, an award of permanent maintenance was reversed because the appellate court addressed the affirmative duty to seek employment embodied in section 504(b)(2). (*Heller*, 153 Ill. App. 3d 224; Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(2).) The wife in *Heller* was college-educated and trained as a travel agent. Furthermore, the parties' children were at or approaching college age. (*Heller*, 153 Ill. App. 3d at 235.) In the present case, wife has a high school education, has four minor children, and is permanently disabled. Further, she has received no formal training in job skills. We thus distinguish the *Heller* case.

The *McNeeley* case focused on the award of permanent maintenance to a wife upon the dissolution of a 32-year marriage. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320.) The wife had a high school education, some secretarial training and 1½ to 2 years' job experience and had made no effort to become employed during the marriage dissolution proceedings. This case may be distinguished from the present case in that, in *McNeeley*, wife *did* get a license to run a day-care facility out of her home, thereby making some effort at

obtaining independent income. Furthermore, she is permanently disabled, so the types of employment she may apply for are limited.

Thus, this court does not find husband's argument convincing. Furthermore, the statute provides for maintenance review if conditions change. That is, maintenance may be modified if one party files a motion for modification and demonstrates a substantial change in circumstances. (Ill. Rev. Stat. 1991, ch. 40, pars. 510(a), (c).) Thus, if there is a decrease in wife's expenses or an increase in her earning capacity, or a decrease in husband's resources, or if wife were to remarry or choose to cohabit with another on a resident, continuing conjugal basis, the maintenance award would be reviewable. Ill. Rev. Stat. 1991, ch. 40, pars. 510 (a), (c); *Heller*, 153 Ill. App. 3d at 235-36.

Husband argues that, although the trial court noted his unemployment situation was a result of bad faith on husband's part, his unemployment is "not completely voluntary." That argument, too, is not convincing.

In its opinion and order, the court noted that evidence was presented at trial showing the assets of Eagle Press of Barrington were in excess of $100,000 and the debts were less than $50,000. In addition, tax returns and expert testimony established that this business carried a value of approximately $192,430, including $70,000 worth of good will. Furthermore, testimony was presented which showed the business was considered to be a "viable entity." The court based its award of permanent maintenance, in part, on husband's "past demonstrated ability to earn substantial sums and his voluntary actions which *** resulted in his current employment status." Thus, the record indicates that husband's unemployment is not involuntary and his argument lacks merit in light of the evidence.

Husband argues that section 504(b)(6) provides that the court should consider what the paying spouse is able to pay and that current income is not the only factor. He contends that he has no special training and, therefore, without his business, he has no prospect of making $60,000 per year. He puts forth that he earned that much in the past only because he had a business, which he no longer has, and has no unique talent that would permit him to step back into a job at that pay level.

In cases like this, where present income is uncertain, a court may consider past earnings. (*In re Marriage of Van Ness* (1985), 136 Ill. App. 3d 185, 190; *In re Marriage of Butler* (1982), 106 Ill. App. 3d 831, 837.) Although the cited cases pertain to child support issues, we believe the principle we draw from them is equally applicable in helping to determine a proper maintenance award.

To take the analysis one step further, the trial court based its decision not only on "past demonstrated ability to earn," but also on "voluntary actions which have resulted in his present employment status." In addition, the court noted in its opinion that the wife testified at trial that the husband threatened, on more than one occasion, that he would not allow a judge to dictate how he would operate his businesses and that he would "run them into the ground before he gave her a penny." Thus, the court perceived that there was some degree of bad faith on the part of the husband.

This court stated in *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, that the amount of maintenance must be calculated on the basis of the supporting spouse's ability to pay, which is linked to the amount of income he would have realized had he chosen not to voluntarily leave his job. (*Smith*, 77 Ill. App. 3d at 864.) In *Smith*, wife appealed an award of maintenance, arguing it was inadequate to support her. Before husband instigated the dissolution of the marriage, he was a successful engineer and president of his own company making $50,000 per year. He voluntarily resigned from his position during the marriage dissolution proceedings on the ground that he did not want to work long hours anymore. He started an engineering consulting firm. The trial court based the maintenance award on the prospective salary he would make as an engineering consultant, which was less than his former salary. This court ruled that the maintenance award should be raised to be appropriate for one earning $50,000 income per year. We reasoned that, while the court could not hold that he must stay at the high-paying job, we could hold that he must pay maintenance based on his ability to pay. This court concluded that this ability to pay was linked to the amount he could have made, had he chosen not to resign. *Smith*, 77 Ill. App. 3d at 864.

In the present case, husband and wife became accustomed to his earning $60,000 per year through his businesses. The trial court found that husband, through voluntary actions, cut short his employment by liquidating the Eagle Press of Barrington. Thus, the trial court based the amount of maintenance in part on the past income husband was able to earn before he chose to liquidate his business and become unemployed. This is consistent with the *Smith* analysis. Thus, it was proper to base the amount of the maintenance award on the past earnings of husband.

Husband claims that the issue of maintenance should have been reserved by the trial court. He cites *In re Marriage of Carini* to say that an award of maintenance is properly reserved where the spouse from whom maintenance is sought cannot pay due to a lack of funds.

*(In re Marriage of Carini* (1983), 112 Ill. App. 3d 375, 382.) That case involved a carpenter who could not pay maintenance to his ex-wife because his hand, which had been previously injured in a work-related accident, prohibited him from working. The present case may be distinguished on the grounds that, here, husband *voluntarily* liquidated his business, thus putting himself out of work. Also, there was testimony at trial that husband showed bad faith in comments he made to wife about the business. In addition, wife points out that her blindness will not reverse itself, so to reserve jurisdiction, so that the court revisits the issue of maintenance at some point later in time, is inappropriate.

This court finds that an award of maintenance for a limited period is appropriate where the spouse is employable at an income not overly disproportionate from the standard of living established during the marriage. Conversely, where the wife is not employable or is employable only at a low income as compared to her previous standard of living, then permanent maintenance would be appropriate. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452.) In the present case, while wife may have developed some skills through her work in the Eagle Press and "Letter Shop," she is legally blind and may be hindered to some degree by that. Thus, she may not be able to be employed at an income that would compare to her previous standard of living. Furthermore, she functioned as a homemaker and mother and so probably did not have much time to devote to developing career skills.

After examination of the record, and in light of the principles of law set forth above, this court finds that the trial court's decision to award wife permanent maintenance at the amount of $1,000 per month was not excessive. This court finds no abuse of discretion on the part of the trial court, and the maintenance award is affirmed.

## ATTORNEY FEES

Husband argues the trial court abused its discretion by awarding attorney fees in the amount of $27,000 and $2,416 to wife. Wife contends there was no abuse of discretion. The Act provides that attorney fees may be awarded to one or the other party:

"(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal

representation, expected to be incurred by any party, which award shall be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders.

\* \* \*

(b) In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without cause or justification, the court shall order the party against whom the proceeding is brought to pay the costs and reasonable attorney's fees of the prevailing party." (Ill. Rev. Stat. 1991, ch. 40, pars. 508(a), (b).)

An award of attorney fees is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299.

Husband contends that to justify the allowance of attorney fees, there is a requirement by the party seeking relief to show her own inability to pay and the ability of the other spouse to pay. He further argues that any award of attorney fees is subject to the ability of the party to pay, and, if the paying party is unable to meet the cost, the amount paid may be less than the value of the services. He then goes on to argue that he has no ability to pay. Therefore, he says, the award of $27,000 and $2,416 attorney fees was an abuse of discretion.

Wife argues that, while it may appear that she has received most of the assets of the marriage, the estate is not substantial. She has no prospect of employment and must care for four children. She further argues that the spouse receiving property in the division of the assets need not divest herself of property to pay attorney fees. Hence, she argues, there was no abuse of discretion by the trial court.

■■ It is true that the propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay and a demonstration of the ability of the other spouse to do so. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299-300.) We note that the trial court, in making the award of attorney fees, stated in its finding that wife was financially unable to pay her counsel and that husband did have the ability to earn substantial sums and that his present financial condition was caused by his own willful acts.

Thus, the court took into consideration the relevant factors, made the appropriate findings, and properly awarded attorney fees in this case.

It is not necessary for the spouse seeking fees to divest her capital assets, deplete her means of support, or undermine her economic stability. (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 919.) In *Weinberg*, the court found that the only source of wife's income was maintenance and child support out of which she had to pay living expenses and taxes. The court found that such income would be inadequate to cover the costs and fees of the litigation. (*Weinberg*, 125 Ill. App. 3d at 919.) The present case presents a similar dilemma. Wife has income only from social security disability payments for herself and the children, the day-care facility income, maintenance, and child support. It is disputed as to whether she has income from the "Letter Shop." The trial court found that her income would not cover the costs and fees of litigation. We agree.

Moreover, this court has found, if a party must use the judicial process to obtain compliance with the terms of a decree by the court, that party is entitled to reasonable attorney fees, even absent a showing of his own inability to pay. (*In re Marriage of Wardell* (1986), 149 Ill. App. 3d 537, 542.) In the present case, wife's attorney has spent time in connection with wife's petition for rule to show cause and petition for adjudication of criminal contempt. Hence, on this basis it would be proper to award a portion of the attorney fees.

However, to award attorney fees on this basis alone would limit the award to attorney time spent on these petitions. Since the trial court awarded attorney fees on the basis of its findings with respect to the financial situations of the parties, this court finds that the trial court did not abuse its discretion in awarding attorney fees in the amount of $27,000 and $2,416 to wife. Considering all of the relevant factors before us, including the financial positions of the parties and the voluntary actions of the husband, we conclude that the trial court properly exercised its discretion in requiring husband to pay wife's attorney fees. Thus, the award of attorney fees to wife is affirmed.

This court has reversed the contempt findings, and on that basis finds it unnecessary to address the issue of whether husband has purged himself of the contempt findings.

The judgment of the circuit court of McHenry County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

McLAREN and GEIGER, JJ., concur.