NICK PANCOTTO et al., Plaintiffs and Counterdefendants-Appellees, v. ALLEN T. MAYES, Defendant and Counterplaintiff (William G. Uelsmann, Defendant and Third-Party Plaintiff and Contemnor-Appellant; P.C.H., Ltd., Third-Party Defendant).

Second District   No. 2—98—0471

Opinion filed April 1, 1999.

GALASSO, J., dissenting.

Joseph E. Voelkl, of Lisle, for appellant.

Kathleen I. Niew and Patricia M. Fennell, both of Niew & Associates, P.C., of Oak Brook, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

· The contemnor, William G. Uelsmann, appeals from an order of the circuit court of Du Page County finding him in contempt of court for refusing to be sworn at a citation to discover assets proceeding. We vacate the trial court's order.

The contemnor raises 14 separate issues on appeal. However, the great majority of these issues are related to the arbitration proceedings, which are not before this court as a part of this appeal. The remaining issues concern the contemnor's claim that the trial court erred in finding him in criminal contempt of court without the required procedural safeguards.

On April 13, 1998, the contemnor appeared before Judge Richard Lucas on a continued citation to discover assets proceeding. The contemnor is an attorney but was represented by counsel at the hearing. When Judge Lucas requested that the contemnor raise his hand to take the oath, the contemnor moved that Judge Lucas recuse himself. Judge Lucas denied the motion and again requested that the contemnor raise his hand to be sworn. The following colloquy then occurred:

"MR. UELSMANN (the contemnor): I refuse to do, respectively [*sic*], sir. You and I are both attorneys. I honor this Court.

THE COURT: Sir, do you want to raise your right hand—

MR. UELSMANN: Sir, I decline—

THE COURT: —and take the oath? Do you decline to do so?

MR. UELSMANN: I decline to do so, sir.

THE COURT: On what basis?

MR. UELSMANN: On the basis that you are asking me to provide information that is privileged without proper authority.

THE COURT: Well, here is what we are going to do, Counsel. You have a court reporter here today. I want you to take the oath. And if you believe that there is some information in response to some question that is asked of counsel during the course of the citation, you certainly make a record of it and we will determine that, okay?

Do you want to raise your right hand, please?"

The trial court allowed the contemnor to consult with his attorney. The trial court then advised the contemnor that, while he could make a record as to the questions that he believed would violate the attorney-client privilege, the citation would proceed. The following colloquy then occurred:

"MR. UELSMANN: Your Honor, I have listened to your comments this morning, and I have carefully considered them. I hear what I perceive to be ongoing prejudice in this matter. I respectfully refuse to proceed further in this matter.

THE COURT: Okay. I am going to find you in direct contempt of court.

Take him into custody.

You are remanded to the custody of the Du Page County Sheriff. *You can purge yourself of contempt, sir, by agreeing to answer the questions in keeping with these guidelines.*" (Emphasis added.)

The trial court denied the contemnor's request for a trial by jury presided over by a different judge. The *jail commitment order* signed by Judge Lucas in this case provided only that the contemnor was found in criminal contempt of court; it lists only the contemnor's name, and it does not provide for any period of confinement, any sanction other than jail, or any requirements of purgation.

The order of contempt states the name of the contemnor and finds that he is in contempt for refusing to be placed under oath and answer questions. The order fails to set forth the type of contempt, sanctions, or purgation. The contemnor contends that, as he was found in direct criminal contempt, he was entitled to certain procedural safeguards including notice of the charges against him, the opportunity to prepare a defense, proof of criminal intent, and a trial by jury before a disinterested judge. He further contends that the judgment order failed to set forth the grounds for the finding of contempt and that it was a violation of his rights to due process for the trial court to sentence him to an indefinite period of incarceration. It is uncontroverted that the contemnor was not provided with the procedural safeguards required in a criminal contempt proceeding. Rather, the plaintiffs, Nick Pancotto and Paramount Development Corporation, argue that the contemnor was not entitled to such procedural safeguards because the trial court actually held the contemnor in direct civil contempt and not criminal contempt. Considering the lack of specificity in the order and the mischaracterization of criminal contempt in the jail commitment order, it is difficult to agree with either party without a complete review of the record to determine what transpired below.

■ The distinction between criminal and civil contempt has been set forth as follows. Where the contemnor is being punished without the possibility of relief from punishment, the finding is one of criminal contempt. *In re Marriage of Morse*, 240 Ill. App. 3d 296, 302 (1993). Civil contempt relies on coercion of the contemnor; he is being coerced to do something and thus can be relieved from the coercion by compliance. *Morse*, 240 Ill. App. 3d at 302. Civil contempt proceedings have two fundamental attributes: (1) the contemnor must be capable of taking the action sought to be coerced, and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 44 (1990). In other words, the contemnor must have an opportunity to purge himself of contempt by complying with the pertinent court order. One of the chief characteristics of civil contempt is that the contemnor must "hold the key to the cell," i.e., he must have it within his power to purge himself by complying with the court's order. See *Betts*, 200 Ill. App. 3d at 44.

■ In *Betts*, the court set forth in detail the distinctions between direct and indirect criminal contempt and direct and indirect civil contempt and the procedural rights of persons charged with each form of contempt. See *Betts*, 200 Ill. App. 3d at 43-60. Persons charged with direct contempt that occurred in the actual presence of a judge, as in the present case, enjoy fewer constitutionally guaranteed procedural

rights than those charged with indirect contempt or with direct contempt that occurred in the constructive presence of a court. *Betts*, 200 Ill. App. 3d at 49. Fewer constitutionally mandated procedural rights apply to persons charged with civil contempt than apply to those charged with criminal contempt. *Betts*, 200 Ill. App. 3d at 49.

■ However, all persons charged with civil contempt are entitled to minimal due process. *Shillitani v. United States*, 384 U.S. 364, 371, 16 L. Ed. 2d 622, 627, 86 S. Ct. 1531, 1536 (1966). Accordingly, civil contempt orders must be in writing. See *Central Production Credit Ass'n v. Kruse*, 156 Ill. App. 3d 526, 534 (1987). Further, a sentencing order in a civil contempt proceeding must contain an effective purging provision. *In re Marriage of Logston*, 103 Ill. 2d 266, 289 (1984); *In re Marriage of Harvey*, 136 Ill. App. 3d 116, 118 (1985). Whether for direct or indirect civil contempt, the order must specify what the contemnor is required to do, so that by compliance contemnor can purge himself of contempt and be discharged from jail. See *Todd v. Arbuckle*, 1 Ill. App. 3d 32, 33 (1971); *Continental Illinois National Bank v. Brach*, 71 Ill. App. 3d 789, 792-93 (1979). Further, a civil contempt order must, "within its four corners, [set] forth the terms upon which a contempt may be dissolved and the defendant released from jail." *In re Estate of Maslowe*, 133 Ill. App. 3d 1043, 1047 (1985).

■ The written order in the case at bar is woefully inadequate as a direct civil contempt order. Although it orders that the contemnor be "delivered for the Sheriff of Du Page County" for an unspecified amount of time, it fails to state the nature of the contempt, fails to indicate whether the sanction of imprisonment is coercive or punitive, and, most egregiously, fails to set forth the terms upon which the contempt order may be dissolved and the contemnor released from jail. See *Maslowe*, 133 Ill. App. 3d at 1047. In other words, the written order fails to provide the contemnor with the keys to his cell. Accordingly, the contempt order is so defective as to be void. Thus, we must vacate the order.

We recognize that the trial court stated in open court that the contemnor could purge himself of contempt by agreeing to take the oath and answer questions regarding his client's assets. However, the trial court's statements, although illuminating, do not cure the fatally defective written order in this case.

We also note that almost all of the cases cited above involve *in*direct civil contempt orders. Although the contempt committed in these cases is different, the orders of contempt, as in the case at bar, invariably were pronounced in the presence of the contemnor in open court. Further, we believe a direct civil contemnor has the same right as an indirect civil contemnor to be notified in writing as to how he

can purge himself of contempt. Without such a written order, the coercive purpose of a civil contempt order is frustrated. Any contemnor, direct or indirect, will be unable to conform his conduct to the court's mandate unless he remembers precisely what the trial court said in open court or has a written transcript of the proceeding. Further, without a proper written order, the jailor will not know when or if the contemnor has complied with the court's requirements.

Further, the dissent's argument that the oral order must prevail over the written order is ill conceived. The dissent cites *People v. Tackett*, 130 Ill. App. 3d 347 (1985), and *People v. Thurston*, 255 Ill. App. 3d 512 (1994), to support its argument. In both cases this court held that the written pronouncement of sentence prevails over an oral pronouncement of sentence. Thus, we believe these cases support our position rather than the dissent's.

Nevertheless, the dissent asserts that *Tackett* and *Thurston* stand for the proposition that, where oral and written orders are in conflict, the order that is valid and internally consistent with the record as a whole must prevail. We believe *Tackett* is factually distinguishable from the case at bar because the issue in that case involved credit against the criminal defendant's jail sentence. The dissent ignores the fact that, unlike a civil contempt order, a sentencing order does not require a defendant to conform his behavior to the mandate of the court as a condition of freedom. In cases in which a defendant is required by the court to conform his behavior to a court order as a condition of freedom, a written order must prevail over a conflicting oral order. See *People v. Hayslette*, 107 Ill. App. 3d 647, 650 (1982).

In *Hayslette*, the trial court found the defendant guilty of driving under the influence of intoxicating liquor and orally pronounced five conditions of a one-year supervision. However, the written order omitted the fifth condition that the defendant file a report of compliance. Four months after the one-year period had ended, the State filed a petition to revoke the defendant's supervision. The defendant argued that the trial court lacked jurisdiction to hear the petition. The State argued and the trial court agreed that the trial court retained jurisdiction over the defendant because the defendant failed to comply with the fifth condition contained in the *oral* order that he file a report of compliance. The appellate court reversed, stating:

> "We will not presume awareness of the report requirement merely because the defendant was present in open court, as the trial court did. Rather, the formal written order of the court must control its oral pronouncements." *Hayslette*, 107 Ill. App. 3d at 650.

*Hayslette* is more analogous to the case at bar than the sentencing case (*Tackett*) cited by the dissent. Because the defendants in the case

at bar and *Hayslette* were required to conform their behavior to the courts' *written* orders as conditions of their freedom, the need for an express and unambiguous order setting out those conditions was paramount. In contrast, the defendant's freedom from punishment in *Tackett* was not conditioned upon compliance with any order. Thus, express notice was not paramount, as it is here.

We also find support in *Thurston* (255 Ill. App. 3d 512), another case cited by the dissent. In *Thurston*, this court held that a written order assessing statutory penalties as a condition of probation prevailed over an oral order that assessed only a fine "plus costs." *Thurston*, 255 Ill. App. 3d at 514-15. Thus, we believe *Thurston* supports our position rather than the dissent's.

Finally, in this case, a stay pending appeal was granted by this court after we reviewed the order and were unable to determine why the defendant, ostensibly guilty of a criminal contempt, was in jail for an indefinite period of time.

The judgment of the circuit court of Du Page County is vacated.

COLWELL, J., concurs.

JUSTICE GALASSO, dissenting:

I respectfully dissent from the conclusion reached by my colleagues. We were fortunate to have the report of proceedings available with the record. The majority is correct in its statement that the written order was inappropriate. The law is clear; the contemnor must know why he is being held in contempt, whether or not the contempt is criminal or civil, and, if civil, what the contemnor must do in order to purge himself. The written order of contempt in this case was poorly drafted and does not meet the standards previously set by this court.

However, as mentioned, there was a court reporter present and there is a written record. The contemnor has not argued that he was not advised of the process to purge himself. To the contrary, the record in this case is clear.

"MR. UELSMANN (the contemnor): I refuse to do, respectively [*sic*], sir. You and I are both attorneys. I honor this Court.

THE COURT: Sir, do you want to raise your right hand—

MR. UELSMANN: Sir, I decline—

THE COURT: —and take the oath? Do you decline to do so?

MR. UELSMANN: I decline to do so, sir.

THE COURT: On what basis?

MR. UELSMANN: On the basis that you are asking me to provide information that is privileged without proper authority.

THE COURT: Well, here is what we are going to do, Counsel.

You have a court reporter here today. I want you to take the oath. And if you believe that there is some information in response to some question that is asked of counsel during the course of the citation, you certainly make a record of it and we will determine that, okay?

Do you want to raise your right hand, please?"

The trial court allowed the contemnor to consult with his attorney. The trial court then advised the contemnor that, while he could make a record as to the questions that he believed would violate the attorney-client privilege, the citation would proceed. 304 Ill. App. 3d at 113. The following colloquy then occurred:

"MR. UELSMANN: Your Honor, I have listened to your comments this morning, and I have carefully considered them. I hear what I perceive to be ongoing prejudice in this matter. I respectfully refuse to proceed further in this matter.

THE COURT: Okay. I am going to find you in direct contempt of court.

Take him into custody.

You are remanded to the custody of the Du Page County Sheriff. *You can purge yourself of contempt, sir, by agreeing to answer the questions in keeping with these guidelines.*" (Emphasis added.)

The trial court denied the contemnor's request for a trial by jury presided over by a different judge. The order signed by Judge Lucas in this case provided that the contemnor was found in criminal contempt of court.

It is clear that it was the trial court's intention and order to hold the appellant in direct civil contempt. Civil contempt relies on coercion of the contemnor; he is being coerced to do something and thus can be relieved from the coercion by compliance. *Morse*, 240 Ill. App. 3d at 302. The civil contemnor must be provided with the "keys to his cell." That is, he must be allowed to purge himself of the contempt even after he has been imprisoned. *People v. Doherty*, 165 Ill. App. 3d 630, 635 (1988).

While the jail commitment order in this case provided that the contemnor was found to be in criminal contempt of court, I believe that the order in this case must be read in conjunction with the statements of the trial court. As quoted above, the trial court's statement that the contemnor could purge himself of contempt by taking the oath indicated that ordering the contemnor's incarceration was not punitive but coercive in nature. Once the contemnor would agree to take the oath, no other sanctions were to be imposed upon him. As the contemnor's refusal to take the oath and be sworn occurred in the presence of the trial court, the contempt was direct. See *Betts*, 200 Ill. App. 3d at 47. Therefore, contrary to the written order in this case,

the contemnor was found in direct civil contempt of court and was told in open court what he had to do to purge himself. See *Thurston*, 255 Ill. App. 3d at 514-15 (in ascertaining the terms of a sentence, a reviewing court may examine the record as a whole, since the oral pronouncement of sentence and the written sentencing order entered on the same day can be viewed as one transaction); *Tackett*, 130 Ill. App. 3d at 353 (courts may determine which to follow, the common-law record or the report of proceedings, depending on whether one of those sources has an internal inconsistency or would represent improper action).

In summary, as the contemnor was found in direct civil contempt, he was not entitled to the procedural safeguards afforded an individual found in criminal contempt, either where the sentence to be imposed for direct criminal contempt exceeds six months or the finding is of indirect criminal contempt. See *Betts*, 200 Ill. App. 3d at 43-60. While a finding of indirect civil contempt requires that the contemnor be afforded minimal due process of notice and an opportunity to be heard (see *Betts*, 200 Ill. App. 3d at 52-58), the same are not required for a finding of direct civil contempt. The contemnor's contention that he was improperly sentenced to an indefinite period of incarceration is without merit since he could purge himself of the contempt by being sworn as a witness, and, thus, he "held the keys to his jail cell." Finally, while in the future the trial court should pay closer attention to the provisions of the orders it signs, the record in this case was sufficient to determine the basis for the finding of contempt.

I conclude, as the report proceedings established, that the contemnor was found to be in direct civil contempt and that the trial court acted properly in ordering him to be incarcerated until such time as he purged himself of the contempt by taking the oath to be sworn as a witness and answer questions in the citation proceeding.