JAMES HELM *et al.*, Plaintiffs-Appellants, v. JASON P. THOMAS, Defendant-Appellee (James Walker, Respondent-Appellant; Joseph P. Gaston *et al.*, Defendants).

Fourth District   No. 4—05—0386

Argued November 17, 2005.—Opinion filed December 7, 2005.

James Walker (argued), of Walker & Wylder, Ltd., of Bloomington, for appellants.

Barbara Snow Mirdo (argued) and Brian P. Thielen, both of Thielen, Foley & Mirdo, L.L.C., of Bloomington, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In this case, we consider whether the trial court erred by finding plaintiffs, James and Susan Helm, and their attorney, James Walker, in indirect civil contempt of court. Because we conclude that the court erred by so doing, we reverse.

## I. BACKGROUND

In October 2000, the Helms filed a lawsuit against defendants Jason P. Thomas, Joseph P. Gaston, Robert A. Nickel, and St. Paul

Guardian Insurance Company, for damages arising out of three separate car accidents involving James. Walker served as the Helms' legal counsel in the lawsuit. Thomas was represented by Scott Spooner, an attorney with the law firm of Heyl, Royster, Voelker & Allen.

In March 2004, after a jury was impaneled and sworn, but before trial began, Walker and James faxed a letter to attorney Rick Velde, who worked at the firm of Heyl, Royster, Voelker & Allen. The letter stated, in pertinent part, as follows:

> "In February 1999, I asked you for, and you provided to me, legal advice regarding uninsured motorist claims which I had (and still have) against St. Paul Insurance Company. Among the legal services you provided was your review, and suggestions for the revision, of the draft of a letter which I brought with me when I met with you at your office on the afternoon of February 11, 1999. I incorporated your suggestions into the final draft of the letter which I mailed to St. Paul's employee, Clara Suttles, on February 12, 1999.
>
> Today your firm, Heyl, Royster, Voelker & Allen, asked Judge Leslie Graves to receive into evidence a redacted version of the February 12, 1999, letter and requested that Judge Graves bar me from testifying to the circumstances of its creation, including the legal advice you gave me concerning this matter.
>
> I am hereby requesting that you and your firm, Heyl, Royster, Voelker & Allen, cease and desist from (a) any and all action that is adverse to me regarding the matters upon which you provided legal advice on February 11, 1999, and (b) any effort to keep the jury trying the case of Helm v. Gaston, Sangamon County No. 00[—] L[—]316, from receiving all the facts regarding St. Paul's request that I prepare such a letter and your advice that I honor St. Paul's request and your advice as to what should be included in the letter."

At a hearing the following day, Spooner presented the March 2004 letter to the trial court and informed the court that he would have to withdraw as Thomas's counsel. The court accepted Spooner's withdrawal and declared a mistrial.

In April 2004, Thomas filed a motion for a finding of contempt against Walker and the Helms, alleging, in pertinent part, that James and Walker violated Supreme Court Rule 213 (210 Ill. 2d Rs. 213(f), (i)) by failing to earlier disclose the alleged conflict of interest. In his motion, Thomas (1) identified opportunities that arose during the discovery process, in which the Helms could have revealed James's prior attorney-client relationship with Velde; and (2) alleged that Walker "deliberately" caused a mistrial. For relief, Thomas sought an

order (1) finding Walker and the Helms in contempt of court, and (2) requiring Walker and the Helms to reimburse Thomas and his insurer for all of the attorney fees incurred between the date that Heyl, Royster, Voelker & Allen entered an appearance in the case and the date the alleged conflict was revealed.

Following an October 2004 hearing on the motion for a finding of contempt, the trial court took the matter under advisement. In February 2005, the court entered a written order dismissing Thomas's motion for a finding of contempt, upon determining that his motion was not properly pleaded in the form of a petition for rule to show cause. The court gave Thomas 30 days to refile.

In March 2005, Thomas filed a petition for rule to show cause why Walker and the Helms should not be held in indirect civil contempt of court. The petition essentially realleged the claims set forth in Thomas's April 2004 motion.

Following an April 2005 hearing on Thomas's petition, the trial court entered a written order finding Walker and the Helms in indirect civil contempt for failing to disclose during discovery the attorney-client relationship between James and Velde. As sanctions, the court ordered Walker and the Helms to (1) reimburse Sangamon County for costs incurred in summoning the individuals who were examined for jury service in March 2004 and (2) reimburse Thomas and his insurer for "all future attorneys fees and expenses incurred by attorney Brian Thielan," who was Thomas's new counsel.

This appeal followed.

## II. THE TRIAL COURT'S FINDING OF INDIRECT CIVIL CONTEMPT

Walker and the Helms first argue that the trial court erred by finding them in indirect civil contempt. Specifically, they contend that the court's judgment was more in the nature of an adjudication of criminal contempt. We agree.

Initially, we note that neither party cited (either below or on appeal) this court's seminal decision in *In re Marriage of Betts*, 200 Ill. App. 3d 26, 558 N.E.2d 404 (1990), which sets forth in explicit detail (1) the difference between civil and criminal contempt, (2) the difference between direct and indirect contempt, and (3) the procedural rights that apply to those charged with any form of contempt. Since its publication, *Betts* has been cited in (1) 2 Supreme Court of Illinois opinions, (2) 17 Fourth District Appellate Court opinions, (3) 27 Illinois Appellate Court opinions from other than the Fourth District, (4) 30 secondary sources, and (5) more than 80 appellate briefs.

■ Thomas contends that the trial court properly entered a judgment of civil contempt because the sanctions the court imposed were remedial in that their only purpose was to reimburse the county and Thomas for "fees and expenses they incurred as a result of the mistrial provided by [c]ontemnors." However, whether a sanction imposed is "remedial" is not what distinguishes civil and criminal contempt sanctions. Rather, "the penalties in a civil contempt case serve only to coerce the contemnor to comply with a court order, and they must cease when the contemnor complies." *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 823, 597 N.E.2d 847, 859 (1992). In *Carpel*, we addressed a similar question and wrote as follows:

> "In the present case, despite Ronald's 'concession' that the trial court found Susan in civil contempt, the court clearly imposed a *criminal* contempt penalty. First, the sanction was punitive and not coercive. Indeed, Ronald's petition did not seek any sanctions to coerce Susan to perform some future act, but rather looked purely *retrospectively* at her prior conduct and requested the court to punish her for it. Second, the court did not condition the penalty on anything she might do in the future \*\*\*, but rather imposed the fine for what she had *already* done." (Emphases in original.) *Carpel*, 232 Ill. App. 3d at 823, 597 N.E.2d at 859-60.

See also *People v. Lindsey*, 199 Ill. 2d 460, 468, 771 N.E.2d 399, 406-07 (2002) ("Criminal contempt sanctions are retrospective in nature and punish the contemnor for past acts which he cannot undo"); *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 111, 709 N.E.2d 287, 289 (1999) ("Civil contempt proceedings have two fundamental attributes: (1) the contemnor must be capable of taking the action sought to be coerced, and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order").

■ In this case, indisputably, the trial court did not impose sanctions to compel a future act, but to punish Walker and the Helms for prior conduct that they could not undo. (Although, oddly, the court ordered Walker and the Helms to pay Thomas's *future* attorney fees, that prospective sanction lacked any coercive element and constituted instead a penalty for a prior act.) We thus conclude that the trial court erred by entering a criminal contempt judgment against Walker and the Helms without providing them with the necessary criminal procedural rights attendant to a charge of indirect criminal contempt. See *Betts*, 200 Ill. App. 3d at 58-60, 558 N.E.2d at 425-26; *In re Marriage of Alltop*, 203 Ill. App. 3d 606, 614-15, 561 N.E.2d 394, 399-400 (1990) (setting forth the procedural rights of persons charged with indirect criminal contempt).

Finally, we note that the situation that arose in the progress of this case should serve as a warning to the bar of this state. Every attorney admitted to practice has social friends and acquaintances who presume out of friendship to ask for informal advice of a legal nature. Acquiescence to such requests can have embarrassing, if not disastrous, consequences unless such informal discussions are treated with the same meticulous care attorneys employ in formal attorney-client relationships.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

APPLETON and COOK, JJ., concur.