In re MARRIAGE OF BARBARA TALMADGE, Petitioner-Appellee, and STEPHEN J. TALMADGE, Respondent-Appellant.

Second District Nos. 2—88—0414, 2—88—0485 cons.

Opinion filed February 24, 1989.

808

Stephen J. Talmadge, of Evanston, appellant *pro se*.

Scott C. Cleal, of Burek & Associates, of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This is an appeal from an order which (1) denied respondent's, Stephen J. Talmadge's, motion to reconsider an order directing respondent to pay extraordinary medical expenses for the parties' children in the amount of $4,806.22; (2) found respondent in contempt; and (3) directed respondent to pay petitioner $158.24 for reimbursement of travel expenses. Respondent also appeals an order directing respondent to pay for attorney fees in the amount of $2,549. These appeals have been consolidated for our consideration.

On appeal, respondent contends that (1) the trial court improperly ordered respondent to pay extraordinary medical expenses of the parties' children; (2) petitioner was barred by *laches* from seeking extraordinary medical expenses; (3) petitioner was estopped from seeking extraordinary medical expenses; (4) the trial court erred in preventing respondent from reading a definition of the term "consult"; (5) the trial court improperly issued a rule to show cause against respondent; (6) respondent was improperly held in contempt; and (7) the trial court improperly awarded attorney fees. We reverse and remand.

A decree of dissolution of the parties' marriage was entered on November 28, 1979. At the time of the dissolution, both parties resided in Illinois with their two children. Pursuant to the dissolution agreement, petitioner (wife) was granted custody of both children. The dissolution agreement also provided that respondent (husband) was responsible for all major medical expenses of the children. It provided in pertinent part:

"The wife shall be responsible for the ordinary medical care of the children. The husband shall be responsible for all extraordinary medical expenses incurred on behalf of the minor children. The term 'extraordinary,' shall include medical, dental, psychological, psychiatric, optical needs of the children, teeth straightening or major dental work, operations, serious illness, requiring hospitalization or extended medical care, but shall not include routine check-ups, minor ailments, or medical supplies.

The wife shall consult with the husband as to the need for other medical attention, except grave emergency, where the life of the child might be imperiled by delay; in the event where the parties do not agree as to whether any expense is extraordinary, the Court shall, upon proper notice and petition, deter-

mine same, even after the expense is incurred.

The husband shall maintain medical insurance on the children for said extraordinary medical care and costs and will be responsible for any extraordinary expenditures above and beyond the coverage of the insurance, except as may otherwise by [sic] Ordered by a court of competent jurisdiction, upon good cause shown."

Subsequent to the dissolution, petitioner moved to California with the two children.

In April 1987, petitioner filed a petition for increase in child support and other relief. The petition prayed for an order directing respondent to pay petitioner the sum of $1,288 for extraordinary medical expenses incurred on behalf of the children.

On September 16, 1987, an order was entered which granted, among other things, leave for petitioner to withdraw her petition for increase in child support and other relief. Also entered on that date was a rule to show cause against respondent for failure to pay medical expenses pursuant to the dissolution agreement, "said sum currently in the amount of $3,573.93." Prior to the entry of this order, respondent and counsel for petitioner appeared before the trial court. At that time, respondent contended that he had not been served with notice of the petition for the rule to show cause.

On October 28, 1987, an order was entered directing respondent to pay $3,573.93 to petitioner for extraordinary medical expenses incurred on behalf of the children. The order also provided that respondent was granted leave to file a motion to reconsider and further provided that respondent was to pay in advance of any hearing on that motion petitioner's cost for airfare from California, the cost of overnight housing, and attorney fees necessary for her counsel to prepare for and represent her at the hearing. No evidentiary hearing was held prior to the order being entered.

Respondent filed a motion to reconsider the order of October 28, 1987.

On February 3, 1988, petitioner filed another petition for a rule to show cause against respondent for an additional $648.95 in extraordinary medical expenses. A notice of motion indicates that this was sent to William Major on February 3, 1988, who was attorney of record for respondent at that time.

On February 22, 1988, the parties appeared before the trial court, respondent filed a *pro se* appearance, and Major, Fennell & Associates filed a motion to withdraw. Later that day, a rule to show cause was entered against respondent for failure to pay extraordinary medical

expenses of the children, "sum currently in the amount of $4,806.22." On that date, the court also entered an order which provided, among other things, petitioner leave to file a petition for attorney fees and leave to file a petition for travel expenses. Prior to the order being entered, respondent alleged that he had not been served a notice of the petition for a rule to show cause.

Also on February 22, 1988, respondent filed a response to the petition for rule to show cause in which he alleged that petitioner at no time attempted to consult him prior to the engagement of medical services for the children. Respondent further asserted that this gave him reasonable cause to believe that he was not responsible for payment of the alleged medical treatments. Respondent also asserted that petitioner's failure to consult him prior to treatment prevented him from, among other things, being reimbursed by his insurance carrier. As a part of his response, respondent attached an exhibit which alleged that his costs would have been $2,403 less if he had been consulted prior to the onset of treatment. Other portions of the claim he contended were not extraordinary medical expenses.

On March 30, 1988, there was a hearing on respondent's amended motion to reconsider and whether respondent should be held in contempt. The motion to reconsider was denied without an evidentiary hearing. An evidentiary hearing was then held on whether respondent should be held in contempt. Respondent stated that petitioner had failed to consult with him prior to the onset of any medical treatment for the children.

Petitioner stated that she did not consult with respondent prior to bringing their daughter to an optometrist, but sent respondent the bill. She further stated that she does not call him prior to taking the children to the eye doctor. She further stated that she did not consult him prior to purchasing glasses for their daughter. She stated that she did contact him prior to orthodontic treatment for their son in relation to a bill dated January 13, 1988. During examination of petitioner, the trial court ruled that questioning should be limited to whether respondent was consulted before a course of treatment was begun and should not extend to whether respondent had been consulted prior to every visit to every doctor. Petitioner stated that orthodontic treatment from Dr. Guy W. Mendivil was begun in August 1987, and that respondent was notified of this prior to the onset of treatment.

Respondent then made a reference to Black's Law Dictionary, to which the court stated: "Mr. Talmadge, just ask questions here, and don't start making speeches or spout law, okay?"

On further examination, petitioner also stated that she notified respondent prior to the onset of psychiatric services for their daughter. She stated that she did not consult respondent prior to treatment of their son's broken finger. She also stated that she did not consult with him prior to treatment for their son when he was swollen and could not breathe. She further stated that she did not consult with respondent regarding related treatment. Petitioner stated that she did not consult respondent prior to the onset of medical treatment when their daughter had mononucleosis. Petitioner stated that she did not consult with respondent prior to the onset of medical treatment when their daughter had a sty.

Although petitioner stated that many of the occasions that she did not consult with respondent were not life threatening, she did state on cross-examination that she felt there was an emergency which required immediate medical attention. She further stated that she attempted to consult with respondent when she obtained medical services for the children. Asked what the result was, she stated, "[l]ack of cooperation, no insurance." Petitioner stated that immediately after the divorce, she tried contacting respondent by phone and later in writing. Petitioner also stated that her current husband had insurance that covered many of the children's expenses and that she was only seeking reimbursement for uninsured portions.

When petitioner was done being questioned, the trial court asked respondent whether he had insurance coverage for any of the expenses. Respondent answered, "I did at the time that the medical expenses were incurred." Respondent also stated that petitioner did not consult with him prior to the onset of orthodontia or the onset of psychiatric treatment.

The trial court entered an order which denied respondent's motion to reconsider. The trial court also granted petitioner leave to file a petition for attorney fees and travel expenses. The order found that respondent was in contempt of court for his failure to obey the orders of October 28, 1987, and the provisions of judgment of dissolution. Respondent was sentenced to 30 days in jail with said sentence to be stayed for a period of 45 days to allow respondent the opportunity to purge himself by payment of $4,806.22 to petitioner for medical expenses of the children. Finally, respondent was ordered to pay petitioner $158.24 for reimbursement of travel expenses. It is from this order that respondent appeals.

On May 9, 1988, the trial court entered an order directing respondent to pay $2,549 in attorney fees. Respondent also appeals this order.

Respondent initially contends that the trial court improperly ordered him to pay extraordinary medical expenses of the children. Specifically, respondent argues that the trial court improperly construed the marital settlement agreement; that the evidence shows that petitioner did not consult with respondent prior to the onset of medical treatment of the children; and that petitioner was required to submit documentary proof that she consulted with respondent.

Respondent contends that the agreement required petitioner to consult with respondent prior to the onset of medical treatment and that the trial court incorrectly interpreted the agreement in such a way as to relieve petitioner of this duty.

In finding respondent in contempt, the court stated:

"I think a very liberal intent of the parties and the word consult as contained in the marital separation agreement *** should be construed by this Court to mean advise because to do other than that could delay and/or deny the children the right to have the extraordinary care and the treatment that they would otherwise have been—have required for their general health and well-being."

Respondent contends that in making this statement, the court allowed petitioner to satisfy her obligation by advising respondent after medical treatment had been received as opposed to requiring her to consult with him prior to obtaining medical treatment.

■ The interpretation of a marital settlement agreement is a question of law (see *In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 900) and is governed by the same rules as those applying to the construction of contracts (*In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 539). Clear and unambiguous agreements must be given their ordinary and natural meaning. (159 Ill. App. 3d at 539.) The intention of the parties is to be determined solely by reference to the agreement. 159 Ill. App. 3d at 539.

■ In the instant case, the trial court was called upon to interpret the term "consult." Webster's variously defines "consult" as: "to deliberate on: DISCUSS *** 2a: to ask advice of: seek the opinion of: apply to for information." (Webster's Third New International Dictionary 490 (1971).) On the other hand, "advise," as it appears to have been used by the trial court, is defined as "to give information or notice to: INFORM, APPRISE." (Webster's Third New International Dictionary 32 (1971).) It is thus apparent that "consult" and "advise" are not the same.

In *People v. Stewart* (1988), 121 Ill. 2d 93, our supreme court reviewed the question of whether a defendant had received adequate

representation during post-conviction proceedings in accordance with Supreme Court Rule 651(c) (107 Ill. 2d R. 651(c)), which states in relevant part: "The record filed in [the trial] court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has *consulted* with petitioner either by mail or in person." (Emphasis added.) (107 Ill. 2d R. 651(c).) In finding that there was sufficient evidence to show that the defendant's attorney had consulted with defendant in accordance with Rule 651(c), the court stated:

> "Where, as here, it is determined that counsel advised defendant of the issues raised in the petition, *and offered him an opportunity to suggest additional claims*, we believe the requirement of Rule 651(c) that counsel confer with defendant concerning the petition has been satisfied." (Emphasis added.) *Stewart*, 121 Ill. 2d at 103.

Under *Stewart*, mere advisement of a course of action, absent an opportunity to respond prior to the inception of that action, does not equate to a consultation. Thus, under *Stewart*, the trial court's interpretation was incorrect. This conclusion is also supported by looking elsewhere in the agreement.

The term "consult" is used in one other place in the agreement wherein it is stated, "[t]he parties hereto shall *consult* with each other with regard to what college, if any, the children of the parties will attend." (Emphasis added.) It appears that "consult" as used in the foregoing passage requires a dialogue between the parties because such a dialogue would be more likely to benefit the children. Additionally, because the agreement provides that both parties are to contribute to the cost of education, the cost of that education is a determination on which the parties would want to have input. Thus, "consult" as used in relation to education appears to mean more than just advise. There is no reason to believe that it should mean something else when used in conjunction with medical expenses. Similar concerns are present regarding extraordinary medical expenses: the welfare of the children, the cost of the treatment, and the appropriateness of the treatment.

■■ Although the trial court found that "consult" meant "advise," its reasoning does not support its definition. The trial court interpreted "consult" to mean "advise" because to do otherwise "could delay or deny the children the right to have extraordinary medical care." Yet, the agreement provides that petitioner need not consult respondent where there is a "grave emergency, where the life of the child might be imperiled by delay." Therefore, delay or denial of ex-

traordinary medical care in emergency situations is not pertinent to the interpretation of the term "consult" because in such circumstances the agreement does not require any consultation. While the agreement refers to consultation not being required where the "life" of a child is imperiled, we find that it is this portion of the agreement that should be read liberally, as it is the welfare of the children that is the controlling and paramount question. See *Page v. Page* (1975), 30 Ill. App. 3d 514, 515.

In accordance with the foregoing analysis, we find that the trial court erred in interpreting the agreement. In our opinion, "consult" should be interpreted to mean advised prior to treatment with sufficient time for respondent to voice any concern regarding the treatment.

Without stating it as such, respondent appears to argue that the consultation requirement is a condition precedent to his duty to pay extraordinary medical expenses. Such reasoning would relieve respondent of his duty where the consultation requirement was not met.

■ Where there is an existing contract, a condition precedent is one that must be performed by one party before the other party is obligated to perform. (*McAnelly v. Graves* (1984), 126 Ill. App. 3d 528, 532.) If the condition is not satisfied by the first party, the other party has no duty to perform. (*Grill v. Adams* (1984), 123 Ill. App. 3d 913, 917.) Whether an act is necessary to the performance of an obligation under the contract depends upon the facts of the case. *McAnelly*, 126 Ill. App. 3d at 532.

■ In the instant case, we find that the consultation requirement was a condition precedent to respondent's duty to pay because prior notification could affect insurance coverage and prior consultation would give respondent an opportunity to make sure the cost of the medical treatment was reasonable and that the treatment was in the best interest of the child.

The trial court found that there had been notification. However, the trial court made no finding as to when such notification took place. Under these circumstances, we cannot determine whether petitioner consulted respondent with regard to all extraordinary medical expenses. Thus, we remand the cause for a determination by the trial court as to whether petitioner consulted with respondent prior to initiating a course of medical treatment. In any instance where there was no consultation prior to the inception of a course of medical treatment, respondent should be relieved of any duty to pay for that treatment.

We find that the above course of action does no violence to the

welfare of the children. Should any situation occur where the failure to fulfill a condition precedent would jeopardize the availability of medical treatment due to the financial inability of the party who had not fulfilled the condition, the agreement could be modified as in the best interest of the children. (See Ill. Rev. Stat. 1987, ch. 40, par. 502(b).) In the instant case, there is no allegation that petitioner is fiscally unable to pay for the claimed costs if the respondent does not. Therefore, any contention that the children will suffer by way of a decision that does not require respondent to pay is illusory.

■ Respondent also contends that no finding that petitioner consulted him could be made absent documentary proof. Respondent makes this argument without citation to any authority, in violation of Supreme Court Rule 341 (107 Ill. 2d R. 341), and we therefore consider it waived.

Respondent also contends that both doctrines of *laches* and estoppel should bar petitioner's recovery. Both of these arguments rest on a factual finding of whether there was a consultation prior to the inception of medical treatment. As the trial court's determination of this issue will be dispositive, we find these issues need not be addressed.

■ Respondent next contends that the trial court improperly prevented him from presenting a definition of "consult" from Black's Law Dictionary.

The trial court has wide discretion in conducting a trial, and such discretion includes precluding argument during the examination of a witness. (*Waukegan Park District v. First National Bank* (1961), 22 Ill. 2d 238, 245.) We find that in prohibiting respondent from quoting Black's while examining a witness, the trial court was properly exercising its discretion to limit examination of petitioner to questioning.

■ Respondent next contends that the trial court improperly issued a rule to show cause. Specifically, respondent argues that the petition for the rule to show cause was not brought in accordance with Illinois Supreme Court Rules 11 and 12 (107 Ill. 2d Rules 11, 12) and Rule 15.02 of the Rules of the Eighteenth Judicial Circuit. Respondent contends that these rules were violated because the rule was issued on the same day the petition was filed. Respondent also appears to contend that it was in violation of the rules because it was not verified.

In response, petitioner contends that the petition was filed in excess of the time required and does not address the verification issue.

Rule 15.02 of the Eighteenth Judicial Circuit provides:

"Except as otherwise provided by law, in all proceedings in-

volving petitions for any relief, the moving party shall serve proper notice in accordance with Supreme Court Rule 11, setting forth the relief prayed for not less than 4 days prior to hearing unless for good cause shown the court otherwise directs." 18th Circuit Court R. 15.02.

Supreme Court Rule 11 provides that if a party is represented by an attorney of record, service shall be upon the attorney. 107 Ill. 2d R. 11.

The record indicates that a petition for a rule to show cause was filed on February 3, 1988, seeking to enforce the order of October 28, 1988, and an additional $648.95 for expenses incurred from the date of that order. The petition contains the verified signature of petitioner. The record further indicates that the petition of February 3, 1988, was served upon W. H. Major, who was respondent's attorney of record at the time. Thus, the petition was timely filed and served in accordance with Supreme Court Rule 11 and Rule 15.02 of the Eighteenth Judicial Circuit. Respondent does not explain why there is a violation of Rule 12, and a reading of Rule 12 does not bring to mind any possible violation given the remainder of respondent's argument. Consequently, we find that there is no violation of Supreme Court Rules 11 and 12 or Rule 15.02 of the Rules of the Eighteenth Judicial District.

Respondent next contends that the trial court improperly found him to be in contempt. Respondent argues that because there was no stated finding that his behavior was contumacious, it was error for the court to hold him in contempt.

As with regard to other issues, the determination of contempt hinges on whether petitioner consulted with respondent prior to obtaining medical treatment for the children. If she did not consult with him, respondent would not have been in violation of the agreement. Therefore, respondent could not be held in contempt. (See *In re Marriage of Harvey* (1985), 136 Ill. App. 3d 116, 117.) On the other hand, if petitioner did consult with respondent prior to obtaining medical treatment, respondent's failure to pay would have been *prima facie* evidence of contempt, and the burden of proof would have shifted to respondent to prove that his failure to pay was either not willful or not contumacious. (136 Ill. App. 3d at 118.) Other than respondent's claim that he was not consulted, there is no other reason which excuses him from not paying.

Because the burden of proof was on respondent to show that his actions were not willful or contumacious, we find that the trial court was not required to state that it found respondent's behavior to

be willful and contumacious. From the trial court's finding, it can be presumed that respondent's conduct was found to be willful and contumacious. We note, however, that this analysis is based on the presumption that the contempt finding was meant to be civil in nature.

■■ ■ In order for a civil contempt judgment to stand, the sanctions must be coercive, and the respondent must be allowed to purge himself of contempt at any time thereafter. (*People v. Rodriguez* (1987), 162 Ill. App. 3d 149, 154; see also *Hicks v. Feiock* (1988), 485 U.S. 624, ___, 99 L. Ed. 2d 721, 731, 108 S. Ct. 1423, 1429; *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 410.) In the instant case, the order finding respondent in contempt sentenced him to 30 days in jail with said sentence to be stayed for a period of 45 days to allow respondent to purge himself by payment of $4,806.22 to petitioner. We find that this order was criminal in nature because, once respondent failed to pay within 45 days, he was to be incarcerated without any way to purge himself. (See *Hicks,* 485 U.S. at ___, 99 L. Ed. 2d at 735, 108 S. Ct. at 1432.) Thus, assuming that on remand the trial court finds that petitioner did consult with respondent, respondent should be entitled to a new hearing using the standard of beyond a reasonable doubt (see *Hicks,* 485 U.S. at ___, 99 L. Ed. 2d at 735, 108 S. Ct. at 1432 (criminal penalties may not be imposed unless the offense is proved beyond a reasonable doubt)), or the court should modify its order to allow respondent to purge himself at any time. Finally, if the sanction is to be criminal in nature, the burden of proof should not shift to respondent to show his failure to pay was not willful and contumacious. See 485 U.S. at ___, 99 L. Ed. 2d at 735, 108 S. Ct. at 1432, (requiring respondent to prove his inability to pay in a criminal proceeding is violative of the due process clause).

Respondent next contends that the trial court should not have awarded attorney fees in excess of an amount previously stated by the trial court. Respondent argues that on October 28, 1988, the trial court granted leave to file a petition "for a couple of hours of attorney fees." Respondent argues that the trial court's later award of $2,549 was an abuse of discretion.

Respondent cites no authority in support of his contention, in violation of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)). We therefore consider respondent's argument to be waived.

■■ Respondent next contends that, because this was a divorce proceeding, the trial court should not have awarded attorney fees prior to determining that petitioner was financially unable to pay and determining the ability of respondent to pay. In response, petitioner

contends that no such determination is required in this case because it is an action to enforce a prior judgment.

Section 508(a) of the Illinois Marriage and Dissolution of Marriage Act provides in pertinent part:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by the other spouse ***." (Ill. Rev. Stat. 1987, ch. 40, par. 508(a).)

In contrast, section 508(b) does not require the court to determine the financial abilities of the parties prior to granting attorney fees related to enforcement of an order. Section 508(b) provides:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without cause or justification, the court shall order the party against whom the proceeding is brought to pay the costs and reasonable attorney's fees of the prevailing party." Ill. Rev. Stat. 1987, ch. 40, par. 508(b).

Given that the instant action was brought to enforce the agreement which was made a part of the order of dissolution and that section 508(b) does not require the court to determine the financial abilities of the parties prior to awarding attorney fees in such actions, we find that the trial court was not required to consider the financial ability of petitioner to pay her attorney fees. Nevertheless, we also remand this issue since attorney fees are to be awarded to the prevailing party, and that determination rests on whether petitioner consulted with respondent.

In accordance with the foregoing analysis, we remand for a determination of whether petitioner consulted with respondent prior to incurring extraordinary medical expenses and for further proceedings consistent with that determination.

Reversed and remanded.

UNVERZAGT, P.J., and DUNN, J., concur.