In re MARRIAGE OF TIMOTHY C. PURCELL, Petitioner-Appellant, and MICHELLE R. PURCELL, n/k/a Michelle R. Moore, Respondent-Appellee.

Fourth District   No. 4—04—0926

Opinion filed March 8, 2005.

Holly W. Jordan, of Mahomet, for appellant.

No brief filed for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Timothy C. Purcell, appeals the order of the circuit court of Champaign County denying his petition for declaratory judgment as to his right to custody and visitation to Cody Purcell, n/k/a Cody Fitzsimmons. For the reasons that follow, we reverse.

## I. BACKGROUND

Timothy and respondent, Michelle R. Purcell, n/k/a Michelle R. Moore, were married on March 25, 1991. On February 22, 1996, the circuit court entered a judgment of dissolution of the marriage. According to the judgment of dissolution and the marital settlement agreement incorporated therein, two children were born to the parties: Heather, born August 25, 1992; and Cody, born December 24, 1994.

The marital settlement agreement included a joint-parenting agreement in which the physical and legal custody of the children would be shared jointly by Timothy and Michelle, with Timothy being designated as primary residential parent. The parties agreed to alternate major holidays and that Timothy would have the children on Father's Day and his birthday, with Michelle getting the children Mother's Day and her birthday. They agreed to share the children's birthdays. The parties further agreed Michelle would have rights of reasonable and liberal visitation as worked out between the parties. Because the parties had cooperated in working out maximum visitation, they desired no set or formal visitation hours and dates be designated in the agreement. The issue of child support was reserved, and Timothy agreed to carry the children as dependents under his major medical hospitalization insurance coverage.

On April 28, 1998, Michelle filed a motion to modify custody and support. The parties appeared in court and represented the motion to modify had been settled and the cause was continued for filing of settlement documents, which were never filed. On September 18, 1998, an order was entered requiring Timothy to pay support for both children.

On July 6, 1999, Michelle filed another petition for modification of child support and custody. On August 6, 1999, the trial court heard and approved an oral stipulation of the parties modifying the joint-

parenting agreement so Michelle would be designated the primary custodial parent for both children "subject to time[-]sharing agreement which has been entered into by and between the parties. Written modified custody order to be entered." Timothy tendered to the court documentation as to his health/hospitalization coverage for both children. Michelle's counsel moved to continue the hearing to investigate the insurance information provided by Timothy. The court allowed the motion. No written order was ever entered as to the modification to the joint-parenting agreement.

On September 10, 2001, Michelle filed a *pro se* petition to modify, suspend, or abate orders for support. The prayer of the petition requested "that the said order for support and/or arrearage/ reimbursement satisfaction be modified, suspended[,] or abated." She alleged a substantial change in circumstances:

"Timothy and I agreed on Cody being raised by Timothy Purcell even though the child might not be his. The suspected father passed away back in June and the parents of the suspected father wanted to see if the child was the suspected father's. So I consulted Tim about this[;] he agreed. The DNA showed [Cody] to be the [biological son of the man] that passed away. [Decedent] had SSD and the family wants Cody to get it. So I was wanting Tim to stop paying so Cody can get the benefits from his biological father."

At the October 4, 2001, hearing on the petition, neither party appeared, and the matter was continued generally. However, that same day, the trial court entered an order of abatement. On October 11, 2001, again, as appears in the record, apparently without the appearance of either party, the court entered an amended order of abatement. Both orders state they were prepared by the "Child Support Enforcement Alliance" and recite the State, representing the Illinois Department of Public Aid, has no objection to entry of the order. The amended order of abatement states:

"1. That the [r]espondent is not the natural father of the minor, Cody C. Purcell, DOB: December 24, 1994, pursuant to genetic testing.

2. That said testing proves the father to be Thomas Fitzsimmons with a Combined Paternity Index of 358,761 to [1].

3. That the [r]espondent is still required to pay support for the minor, Heather Purcell, DOB: August 25, 1992, as previously ordered."

The order was silent as to custody, visitation, or any other issue.

After the entry of the abatement order, Michelle started referring to Cody as "Cody Fitzsimmons," but Timothy's visits with Cody continued as they had been. There were occasional disputes over holiday visitation. Although the exact details are unclear from this record, in August 2003, following an incident at Michelle's house,

Timothy filed for some sort of protective order. He also filed a motion to modify custody as to Heather. In response to Timothy's motion to modify custody, the parties entered a stipulation in which, for the first time, Timothy was given specific dates and times for visitation as to Heather only. In regard to Cody, the stipulation provided:

"The parties acknowledge that Cody Fitzsimmons, a child born during the parties' marriage, is not the biological child of the [p]etitioner. By signing this stipulation, the [p]etitioner is not waiving his claim, if any, for visitation with Cody Fitzsimmons. The [r]espondent, however, objects to [p]etitioner's having standing to seek visitation with Cody in light of the fact that he is not Cody's biological father."

On July 16, 2004, Timothy filed a "Petition for Declaratory Judgment: Petitioner's Custody and Visitation Rights as to the Minor Child, Cody." In this verified petition, Timothy stated he had no objection to paying child support for Cody and further stated his failure to object to the order of October 11, 2001, was based on Michelle's representation that his nonsupport of Cody was required to permit her to receive social security benefits on Cody's behalf greater than Timothy's statutory obligations for two children. The petition requested an order stating Timothy retained parental rights as to both custody and visitation regarding Cody, requiring Michelle to comply with those rights, and confirming the existing visitation order as to Heather entered on May 6, 2004, was also applicable to Cody. The petition also requested a determination of Timothy's child-support obligations as to Cody.

On September 27, 2004, the trial court held a hearing on the petition. Timothy testified to the suspicions of the parties as to Cody's paternity at the time of dissolution, the original agreed order and amended order as to custody and visitation, the circumstances surrounding the order of October 11, 2001, abating child support, his regular visitations with Cody throughout the years, and the difficulties he recently encountered regarding that same visitation. Michelle did not testify, and Timothy's testimony was unrebutted. The trial court found the order of October 11, 2001, abating child support not only vacated Timothy's parental responsibilities (child support) to Cody but also his parental rights (visitation). The court stated the trial court in its order found Timothy was not Cody's biological father and, therefore, the natural implication was he had no visitation rights and could only receive them by agreement with Michelle. The court then relied on portions of *Wickham v. Byrne*, 199 Ill. 2d 309, 769 N.E.2d 1 (2002), which discussed a parent's right to determine visitation issues and right not to have unwanted visitation foisted upon him or her by a court.

This appeal followed.

## II. ANALYSIS

Timothy contends the trial court erred in finding his visitation rights were extinguished by the order abating his child-support obligations in regards to Cody. While Timothy admits Michelle, as Cody's parent, has the right to decide visitation issues for him, he argues the agreed order as to custody and visitation entered by the court in this case was a binding agreement on the parties and is still in force.

■ We note first Timothy has filed an appellate brief and Michelle has not. A court of review is not compelled to serve as an advocate for an appellee and is not required to search the record for ways to sustain the trial court's judgment. On the contrary, where the record is simple, the claimed errors are such that if they can be decided based on the appellant's brief and the record supports such a finding, the trial court's judgment may be reversed. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976). Accordingly, we proceed to the merits of this appeal.

Since the trial court's order denying Timothy's petition for declaratory judgment, our supreme court has decided *In re M.M.D.*, 213 Ill. 2d 105, 820 N.E.2d 392 (2004). In that case, grandparents (parents of the deceased mother) were given visitation rights by the father, and the trial court entered a consent decree to that effect. Later, the father tried to void the agreed visitation based on *Wickham*. The court found he could not do so. While the father could not be required to grant grandparent visitation, once he had agreed to such visitation and the agreement was preserved in a consent decree, he could not void the agreement because *Wickham* did not apply to consent decrees. *M.M.D.*, 213 Ill. 2d at 114, 820 N.E.2d at 398-99.

■ A consent decree is based on an agreement between the parties and is contractual in nature. It is a recordation of the parties' private agreement, not an adjudication of their rights. Once such a decree has been entered, it is generally binding on the parties and cannot be amended or varied without the consent of each party. *M.M.D.*, 213 Ill. 2d at 114, 820 N.E.2d at 399. An exception exists where the contract is void as contrary to public policy. The agreement will not be held void as contrary to public policy unless it is " 'clearly contrary to what the constitution, the statutes[,] or the decisions of the courts have declared to be the public policy or unless [it is] manifestly injurious to the public welfare.' " *H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 57, 805 N.E.2d 1177, 1180 (2004), quoting *Schumann-Heink v. Folsom*, 328 Ill. 321, 330, 159 N.E. 250, 254 (1927).

The court in *M.M.D.* found that while the constitution prohibited the state from forcing parents to give visitation rights to grandparents

because a judge deemed it to be appropriate, nothing prohibits a parent's voluntary decision to bestow visitation privileges on his child's grandparents. In fact, the principles enunciated in *Wickham* require that a parent's voluntary visitation decision be honored. If parents can restrict visitation, they can also grant it, and the courts are obligated to uphold voluntary visitation agreements made by parents. *M.M.D.*, 213 Ill. 2d at 115-16, 820 N.E.2d at 399-400.

We agree with Timothy the principles enunciated in *M.M.D.* should be applied here. Because Michelle agreed to visitation and this agreement was memorialized in the joint-parenting agreement and its later voluntary modification on August 6, 1999, it should be enforced as a contract unless Michelle can show a *contractual reason* for voiding or rescinding it. She has not done so. The record indicates both Michelle and Timothy may have had questions about his paternity in regard to Cody when they entered into the joint-parenting agreement in 1996, but Michelle still voluntarily entered into the agreement. Nothing was done to determine Cody's actual paternity until 2001 when Michelle wanted to gain more "child support" for Cody.

■ The order abating child support entered by the trial court on October 11, 2001, did not address Timothy's agreed-upon visitation rights with Cody. Nor did the finding of paternity recited within it automatically terminate those rights. Thus, Timothy's agreed-upon visitation rights as to Cody are still intact and enforceable. Michelle had superior knowledge of Cody's paternity when she not only agreed to joint parenting with Timothy but, in the original order, agreed Timothy should be Cody's primary custodial parent. If there was uncertainty as to paternity at the time of dissolution, it should have been resolved then and appropriate custody, visitation, and support orders entered.

We note the petition for declaratory judgment requested that a determination be made not only as to visitation but also as to custody and support. We reverse the trial court's denial of Timothy's petition for declaratory judgment as to visitation only. If further proceedings ensue in this case, issues of custody and support may require further consideration by the court.

In the event of further proceedings on visitation, where an agreement as to visitation has been reached and there is presumed parentage, any later dispute over visitation should be resolved under a best-interest standard, not in a poorly drafted order designed solely to get greater economic benefits for the child. The best interest of the child should be the determinative factor even in the case of stepparent visitation. See *In re Marriage of Engelkens*, 354 Ill. App. 3d 790, 798 (2004) (Schmidt, J., dissenting). "Fatherhood requires more than biol-

ogy," and parenthood is a social, psychological, and intentional status. *In re Parentage of Unborn Child Brumfield*, 284 Ill. App. 3d 950, 961, 673 N.E.2d 461, 469-70 (1996) (Knecht, J., dissenting). A decade after Cody's birth, Timothy seeks to continue the status he chose to accept long ago.

## III. CONCLUSION

We reverse the trial court's judgment denying the petition for declaratory judgment insofar as it relates to visitation. We express no opinion on the other issues raised in the petition.

Reversed.

STEIGMANN and APPLETON, JJ., concur.